IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MUOI MUOI LUC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-05-0225 |
| | § | |
| JO ANNE BARNHART, COMMISSIONER | § | |
| OF THE SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 13), Defendant's Response to the Motion for Summary Judgment (Document No. 14), and Plaintiff's Reply (Document No. 15). Having considered the motion for summary judgment, response, reply, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, and the case is REMANDED to the Commissioner of the Social Security Administration for further proceedings, pursuant to the Social Security Act, 42 U.S.C. § 405(g).

I.    **Introduction**

Plaintiff Muoi Muoi Luc ("Luc") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the Commissioner of the Social Security Administration ("Commissioner") denying

_____

[1] On April 13, 2005, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document No. 9.

her application for disability insurance benefits.  Luc argues that substantial evidence does not support the Administrative Law Judge's ("ALJ") determination that Luc is not disabled. Specifically, Luc maintains that the testimony from a vocational expert (VE) was unreliable and provided an insufficient basis for her disability determination.  The Commissioner, in contrast, contends that the ALJ properly relied upon the VE's testimony; substantial evidence is in the record to support the ALJ's decision that Luc retained the residual functional capacity to perform work that exists in significant numbers in the national economy; and that the decision comports with applicable law in that the ALJ properly relied upon the medical vocational guidelines and VE testimony.

## II.    Administrative Proceedings

On August 22, 2000, Luc applied for disability insurance benefits, claiming that she was unable to work from July 4, 1999 as a result of post-traumatic arthritis of the left elbow, and osteoarthritis of the lumbar spine and knees "imposing more than a slight limitation on her ability to perform basic work related activities."  (Tr. 14).[2]  The Social Security Administration denied her application at the initial and reconsideration stages.  After that, Luc requested a hearing before an ALJ.  The Social Security Administration granted her request and the ALJ, Janis Estrada, held a hearing on October 15, 2002, at which Luc's claims were considered *de novo*.  (Tr. 228-264).  On January 23, 2003, the ALJ issued her decision finding Luc not disabled.  (Tr. 10-12; 13-19).

Luc sought review of the ALJ's adverse decision with the Appeals Council.  The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances

---

[2] "Tr." refers to the transcript of the administrative record.

are present: (1) it appears that the ALJ abused her discretion; (2) the ALJ made an error of law in reaching her conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest.  20 C.F.R. § 404.970; 20 C.F.R. § 416.1470.  After considering Luc's contentions in light of the applicable regulations and evidence, the Appeals Council concluded, on November 26, 2004, that there was no basis upon which to grant Luc's request for review.  (Tr. 4-6).  The ALJ's findings and decision thus became final.

Luc filed a timely appeal of the ALJ's decision and a Motion for Summary Judgment (Document No. 13).  The Commissioner has timely filed a response to Luc's Motion for Summary Judgment (Document No. 14), to which Luc has filed a Reply (Document No. 15). This appeal is now ripe for ruling.


## III.  Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).   Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence.  42 U.S.C.§ 405(g).  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision

3

is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. N.L.R.B.,* 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a `conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability.  *Johnson,* 864 F.2d at 344.  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).   The impairment must be proven through medically accepted clinical and

laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

> [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied to work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity."  *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.  If the claimant is presently working, a finding of "not disabled" must be made;

2.  If the claimant does not have a "severe impairment" or combination of impairments, [she] will not be found disabled;

3.  If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.  If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.  If  the claimant's impairment prevents [her] from doing any other substantial gainful activity, taking into consideration [her] age, education, past work experience and residual functional capacity, [she] will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991).

Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir.

1999).  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.  *Id.*  Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.  *Leggett,* 67 F.3d at 564.

Here, the ALJ found at step five that Luc, despite not being able to perform her past medium exertion unskilled work as a cable assembler, had the residual functional capacity to engage in a limited range of light work in a climate controlled environment that required the ability to understand and follow simple instructions.  Upon reference to the medical vocational guidelines as a framework and consideration of testimony from a vocational expert (VE), the ALJ determined Luc was not disabled.  In this appeal, the issue presented by Luc is whether substantial evidence supports the ALJ's conclusion that Luc was not disabled because a significant number of jobs exist that she is able to perform given her residual functional capacity.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age.  *Wren,* 925 F.2d at 126.  Any conflicts in the evidence are to be resolved by the ALJ and not the court.  *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

**V. Discussion**

The ALJ considered objective medical facts, diagnosis and expert opinions of treating physicians, and subjective evidence of pain as testified to by Luc to determine that she has post traumatic arthritis of the left elbow (status post arthroscopy of the left elbow in June 2001), osteoarthritis of the lumbar spine and knees, diabetes, hypertension, asthma, obesity, and depression. (Tr. 14)  Luc accepts the ALJ's evaluation of the medical evidence in proceeding through the first four steps of the disability analysis.  Pl.'s Motion for Summary Judgment at 2 (Document No. 13).  Luc further accepts the residual functional capacity (RFC) assessment, but argues that substantial evidence does not support the finding of alternative suitable employment in significant numbers.  *Id.* at 2, 7-12.

The ALJ determined that Luc retained the RFC to lift 10 pounds occasionally, stand, walk, and sit without restrictions, and occasionally climb, balance, stoop, crouch, kneel, and crawl.  (Tr. 19).  She was restricted to a climate controlled environment. *Id.*  Luc had the ability to understand and follow simple instructions, follow a simple repetitive routine, and get along adequately with supervisors and coworkers in an environment that does not require public contact. *Id.*  Based on this RFC, the ALJ determined, at step four, that Luc could not perform her past work as a cable assembler (medium/unskilled) and dressmaker (light/skilled).  The ALJ then questioned a vocational expert (VE) about whether there were jobs that Luc could perform given her age (51 years at time of hearing), education (high school), work experience and RFC.  The ALJ questioned the VE using hypotheticals as follows:

> Q:  All right.  Assume the following hypothetical individual.  Assume that such individual has the same age, education, similar background of the Claimant, and has the past relevant work experience.  Further assume that such individual has the following medically determinable impairments: including a status-post elbow and rib injuries from a motor vehicle accident, hypertension, asthma, diabetes, colitis [INAUDIBLE], and major depression, and that her condition is associated

7

with headaches and chronic pain.  And as a result, such a hypothetical individual would be relegated to a climate-controlled environment with the limitation as shown in Exhibit 13F, pages 3 and 4 [Tr. 217, 217A]… From an exertional point of view, would there be any jobs in a climate-controlled environment for an individual with the – with these limitations?

A: There would be a few jobs.

Q: At what level would those jobs be?

A: Well, because of the lifting that has been limited to 10 pounds, they could probably be – that would require them to be at a sedentary level.  However, the ability to stand and walk and sit and do all those kinds of things are not limited, so I would say that there are going to be light jobs that would do – or there are light jobs in the economy that do not require any more than 10 pounds of lifting that are classified as light because of the amount of walking and standing as well as having all the occasional stand, stoop, crawl, crouch, and so on.

Q: Could you give some examples of jobs that would be consistent with 13F, pages 3 and 4 [Tr. 217, 217A]?

A: A bench assembler, retail marker, and plastic-hospital-products assembler.

Q: How many of these jobs would exist in the regional and national economy?  Now, there are all in basically what we call a climate-controlled environment –

A: Yes ma'am.

Q: – an air-conditioned type of –

A: Yes, ma'am.  The bench assembler in the local and regional economy – and I define that as the Houston Metropolitan area with approximately six to seven surrounding counties.  Bench assembler, I would estimate that there would be anywhere from 5- to 6,000 jobs; the retail marker, anywhere from 6- to 7,500 – 6,000 to 7,500 jobs.  The plastic-hospital-products assembler, I would estimate those jobs exists [sic] at approximately 2,700 to about 3,500 jobs.

Q: And nationally?

A: In the national economy, I would – each of these jobs would exists [sic] in the tens of thousands, Your Honor.

Q: Are these similar to the type of jobs that the Claimant performed in her past work, except only at a lighter-level type of work?  Say from her past work as an assembler at the medium to heavy level –

8

A: Yes, ma'am.

Q: – unskilled?

A: Yes, ma'am.  They basically require very repetitive type of [INAUDIBLE] –

Q: These are all unskilled jobs.  Is that –

A: That is correct.

Q: – correct?

A: Yes, ma'am.

Q: Okay.  Well, this is on the exertional level with the climate control.  Now, my next hypothetical to you is the same person, except this time, such individual would be limited to – have the additional limitation – such an individual would be able to understand and follow simple instructions, follow simple, repetitive routine, and get along adequately with supervisors and coworkers in an environment that did not require public contact.   Would that change your testimony regarding the jobs that you identified?

A: No, ma'am.

Tr. 258-61.

Upon cross-examination of the VE, Luc's counsel asked whether the Attending Physician's Supplemental Statement of Han Vu, D.C., on May 16, 2001, indicating additional limitations on sitting, standing, and walking,[3] would affect the VE's suggested job alternatives. (Tr. 151, 261-62).

VE:  Then, given that, no there would – it would change my response in that if someone can only two out of eight hours sitting and one hour standing, and one hour walking, then that's not the full day; so therefore, it would not be considered gainful employment.

_____

[3] Dr. Vu's statement included "functional limitations - abilities" indicating the "longest single time duration each activity can be performed," but no unit of measurement is provided. Assuming, as in the hearing, the applicable unit of measurement is in hours, Dr. Vu's statement limits Luc to 2 hours each sitting, right finger dexterity, and right above and below shoulders; 1 hour each "total time on feet," standing, and walking; either zero or "O"ccasional sending [sic], squatting, stooping, kneeling, left finger dexterity, and left above and below shoulders; and "N"ever inside, outside, working with others, and other (unexplained).  (Tr. 151)

9

Atty: If they could do a total hour – a total – unlimited sitting, but limited the time on their feet to one hour standing, one hour walking out of an eight-hour day, would that change your answer?

VE: Unlimited –

Atty: Sitting.

VE: – sitting and one hour walking and one hour standing?

Atty: Yes.

VE: How about – that would bring it down to a sedentary level, I would say.

Atty: So that would eliminate the jobs that you identified?

VE: Right.

(Tr. 262).

Based on the testimony of the VE and consideration of the medical vocational guidelines, the ALJ determined that Luc could perform the following unskilled light jobs: bench assembler, retail marker, and plastic products (hospital) assembler; that such jobs exist in significant numbers in the regional (in the 6-7 surrounding counties of the Houston metropolitan area, 5,000 to 6,000, 6,000 to 7,500, and 2,700 to 3,500, respectively) and national (tens of thousands) economy; and that Luc was therefore not disabled within the meaning of the Act.  (Tr. 18)

In considering the evidence of Dr. Vu, however, the ALJ noted that, as a chiropractor, Dr. Vu's submitted statements could not be considered a "medical opinion" from an "acceptable medical source" under 20 C.F.R. §§ 1527(a)(2) and 1513 (a).  (Tr. 15-16).  While Luc does not challenge the ALJ's evaluation of the medical evidence, the cross-examination shows Luc's counsel had the opportunity to raise questions regarding the VE's testimony and any inconsistencies there may have been with other evidence on the record, including information in

the Dictionary of Occupational Titles ("DOT"), at the hearing.  Upon submitting the appeal request to the Appeals Council, Luc made no indication why she disagreed with the ALJ's decision that she does not "meet the requirements for disability." (Tr. 9).

While Luc may have missed previous opportunities to raise these objections within the agency's review process, the "ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Bagwell*, 338 F. Supp.2d at 735 (citing *Newton*, 209 F.3d at 455).[4]  Here, the ALJ relied upon incomplete VE testimony regarding the DOT requirements for the proposed job alternatives, resulting in findings not supported by substantial evidence.  Specifically, the ALJ found that Luc "has the ability to understand and follow simple instructions" and lift up to 10 pounds occasionally. (Tr. 19).  However, many of

---

[4] Although *Carey*, 230 F.3d at 146 and *Haas v. Barnhart*, 91 Fed.Appx. 942, 948 (5th Cir. 2004) (unpublished), take into consideration claimant's failure to cross-examine the VE regarding any DOT inconsistencies, this court is not inclined to believe failure to raise such issues during the hearing constitutes waiver upon judicial review. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (stating "a plaintiff challenging a denial of disability benefits under 42 U.S.C. § 405(g) need not preserve issues in the proceedings before the Commissioner or her delegates" and citing *Sims v. Apfel*, 530 U.S. 103 (2000)); *See also* SSR 00-4p (requiring the ALJ "explain the resolution of the conflict irrespective of how the conflict was identified");  *See also Gravel v. Barnhart*, 360 F.Supp.2d 442, 452 n.23 (N.D.N.Y. 2005):

> Because of the non-adversarial nature of Social Security proceedings, an ALJ has the duty to affirmatively develop the record and the arguments "both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000) (citation omitted). It is well-settled that an ALJ is not relieved of this obligation even where the claimant is represented by counsel. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000) (further citation omitted)…

> It was therefore the ALJ's duty to ensure that his hypothetical properly reflected [claimant]'s RFC and to require further explanation from the VE if her responses were not adequately substantiated.  Here, the ALJ should have elicited additional VE testimony that would support his findings, and his failure to do so constituted error on his part.

the proposed jobs that exist in significant numbers require a higher level of reasoning ability under the DOT and are classified as light work, requiring the exertion of *up to 20 pounds* of force occasionally or 10 pounds of force *frequently*.[5]  These inconsistencies should have been disclosed by the VE so the ALJ could reconcile the discrepancies in her evaluation and ultimate findings of fact.  "Unless there is evidence in the record to adequately support the assumptions made by a VE, the opinion expressed by a VE is meaningless."  *Bagwell*, 338 F.Supp.2d at 736 (citing *Bowling*, 36 F.3d at 436).  *See also Teverbaugh v. Commissioner of Social Security*, 258 F.Supp.2d 702, 705 (E.D. Mi. 2003) (remanding case where claimant "could not simply 'figure out' which jobs the VE was referring to by simply looking up the job titles… In order to meet

---

[5] The DOT distinguishes sedentary and light work as follows:

S-Sedentary Work - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body.  Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.  Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

L-Light Work - Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects.  Physical demand requirements are in excess of those for Sedentary Work.  Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.  NOTE:  The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT, Appendix C, *available at* http://www.oalj.dol.gov/Public/DOT/References/dotappc.htm or http://www.occupationalinfo.org/appendxc_1.html.

that [step five] burden, the ALJ was required to ensure that there was no conflict between the VE's testimony and the DOT.")

Luc contends that based on her RFC, she is unable to perform the jobs identified by the VE absent evidence that they may be performed at a lesser reasoning level than the DOT indicates and that such qualifying jobs exist in significant numbers.  Luc is correct that the retail marker jobs (identified by the Commissioner as 781.687-042 and 209.587-014[6]) and the plastic hospital products assembler job (identified by the Commissioner as 712.687-010), as suggested by the VE, do not meet Luc's specific RFC for reasoning or strength.  Accordingly, they do not provide substantial support for the ALJ's determination at step five.

The VE also suggested a broad group of "bench assembler"[7] jobs that could be performed by someone with Luc's RFC, but the record does not show which specific jobs the VE considered within this group. (Tr. 259).   As Luc and the Commissioner point out, there are various bench assembler jobs requiring different levels of strength and reasoning ability

---

[6] Commissioner cites DOT 209.587-014, which is a credit-card clerk requiring reasoning level 3 and sedentary work, but the "retail marker" job at reasoning level 2 and light work is 209.587-034. Def.'s Response at 4.

[7] Within the DOT, "Benchwork Occupations" include:

> occupations concerned with the use of body members, handtools, and bench machines to fit, grind, carve, mold, paint, sew, assemble, inspect, repair, and similarly work relatively small objects and materials, such as jewelry, phonographs, light bulbs, musical instruments, tires, footwear, pottery, and garments. The work is usually performed at a set position in a mill, plant, or shop, at a bench, worktable, or conveyor. At the more complex levels, workers frequently read blueprints, follow patterns, use a variety of handtools, and assume responsibility for meeting standards. Workers at the less complex levels are required to follow standardized procedures.

DOT, 7 BENCHWORK OCCUPATIONS, *at*
http://www.occupationalinfo.org/defset13_2796.html
(Official DOL site unavailable www.oalj.dol.gov/libdot.htm on December 21, 2005).

according to the DOT.[8]   When further asked to add an additional restriction corresponding to Luc's nonexertional limitation to "simple" instructions and tasks, the VE testified that her selected job alternatives would not be affected.  Imposing an additional limitation on reasoning ability required would be expected to further erode the number of available jobs compatible with Luc's RFC.  One must assume either the VE's initial estimates were too conservative or her subsequent estimates too optimistic.  While it is reasonable to assume a restriction in reasoning ability would further diminish the suitable jobs for Luc, the question not answered in the record is by how much.

This court agrees that "the pertinent finding at issue is not that Plaintiff could perform a specific number of available… jobs, but rather that she could in general perform work which exists in significant numbers in the Texas and national economies."  *Hollan v. Apfel*, 2001 WL 18015 (N.D. Tex. 2001).   However, even a cursory search of the DOT shows a significant decrease in available bench assembler positions when limited to a reasoning level of one.[9]

Limited to the bench assembler jobs, this does not directly raise an issue of conflict

_____

[8] Luc notes the Agricultural Equipment Bench Assembler (706.684-042) requires a reasoning level of 2, while the Commissioner notes several other bench assembler jobs only require a reasoning level of 1, e.g., Dust-Brush Assembler (739.687-074) and Covered-Buckle Assembler (734.687-050).  The court also notes, however, that the Commissioner proposes Traverse-Rod Assembler (739.687-186), Hand Tapper (737.687-134), and Final Assembler (713.687-018) are covered by the VE's testimony, but they do not match the strength requirements of limited light strength bench assembler positions sought.  They are instead rated Medium, Medium, and Sedentary strength, respectively, which the VE claims are not included in her estimates. (Tr. 262).

[9] A cursory query of the DOT job descriptions available at http://www.occupationalinfo.org containing "assembler strength: L GED: R2" yields 180 hits, but only 29 hits for "R1."  If such a ratio is indeed reflective of the number of positions suitable for Luc's RFC, the decreased amount (~800-970 out of 5,000-6,000 estimated jobs) would approximate those found in *Mericle v. Sec'y of HHS*, 892 F.Supp. 843, 846-47 (E.D. Tex. 1995) (870 jobs were not significant, 270 of which were the number of Final Assemblers (713.687-018) in the entire state of Texas).  *Hollan*, 2001 WL 180151 at *8 n.7 (reciting more cases where specific numbers of jobs were determined).

14

between the VE's testimony and the DOT.  *See Carey v. Apfel*, 230 F.3d 131, 144- 47 (5th Cir.2000) (delineating then-existing conflict on this issue and summarizing approaches adopted by different Circuit Courts of Appeals); *see also Burns v. Barnhart*, 312 F.3d 113, 127 (3d Cir.2002).  Instead, it presents a situation where the VE's testimony is deficient not because it contradicts, but is instead unexplained and based upon the DOT definitions.  The VE's testimony would have conflicted with the DOT if the VE had gone the necessary step further and elaborated on the specific requirements of the jobs she identified as "bench assembler."  In this latter situation, the ALJ could have properly relied on the VE's testimony if it were rationally explained and supported by the record.  *See Carey*, 230 F.3d at 146-47.

The Commissioner argues that the VE's responses provided sufficient support for the ALJ's determination, and submits that the VE duly considered all the limitations posed by the ALJ, but that "misses the point."  *Gravel*, 360 F.Supp.2d at 452.  It would have been reasonable for this court to conclude that the jobs listed by the VE satisfied [claimant]'s RFC if she had elaborated on the specific requirements for each job.  As in *Bagwell*, "[n]either the VE nor the ALJ recognized or discussed the conflict between the VE's testimony and the DOT.  Likewise, neither the VE nor the ALJ articulated plausible reasons for finding the VE's testimony more credible under the circumstances." *Bagwell*, 338 F.Supp.2d at 728.

Here, the DOT contemplates functional requirements that exceed those associated with Luc's RFC in the other two specified jobs, namely the plastic hospital products and retail marker jobs, leaving this court reasonably concerned whether the various bench assembler positions contemplated were also selected erroneously.  As such, the VE's testimony does not provide a sufficient basis to support the ALJ's determination that [claimant] can perform these other bench assembler jobs without further elaborating both their exertional and nonexertional functional

15

requirements and existence in significant numbers.

Absent further clarification, the jobs stated by the VE are irreconcilable with the RFC accepted by the ALJ, and do not constitute substantial evidence in support of her decision. Accordingly, the Commissioner has failed to meet her statutory burden, and the case must be remanded for further development of the record with respect to the jobs Luc can perform.


## VI. Conclusion

Considering the record as a whole, the undersigned is of the opinion that the Commissioner did not carry her burden at step five of the sequential evaluation process to show by substantial evidence that Luc is capable of performing gainful employment that exists in significant numbers in the national economy.  As such, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 13) is GRANTED, and the case is REMANDED, pursuant to "sentence four" of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to the Commissioner for further proceedings consistent with this opinion.

Signed at Houston, Texas, this 20th day of January,  2006.


Frances H. Stacy
United States Magistrate Judge